UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


ERROL I. DUNKLEY                    :
                                    :              PRISONER
        v.                          :    Case No. 3:03CV1913 (WWE)
                                    :
THERESA LANTZ                       :


MEMORANDUM OF DECISION

The petitioner, Errol I. Dunkley ("Dunkley"), is an inmate confined at the Corrigan-Radgowski Correctional Institution in Uncasville, Connecticut.  He brings this action pro se for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to challenge his 1995 conviction for burglary in the first degree. For the reasons that follow, this petition will be denied.

I.   Standard of Review

The federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in state custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of

the United States."  28 U.S.C. § 2254(a).  A federal court may
not reexamine a state court's determination on a state-law issue.
See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also
Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (claim that a
state conviction was obtained in violation of state law not
cognizable in federal habeas petition).

The Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA") amended 28 U.S.C. § 2254 to provide that a federal
court can grant habeas corpus relief to a state prisoner with
respect to a claim that was adjudicated on the merits in state
court only where "the adjudication of the claim ... resulted in a
decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by
the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).
The federal law defined by the Supreme Court "may be either a
generalized standard enunciated in the Court's case law or a
bright-line rule designed to effectuate such a standard in a
particular context."  Kennaugh v. Miller, 289 F.3d 36, 42 (2d
Cir. 2002).

A decision is "contrary to" clearly established federal law
"if the state court applies a rule different from the governing
law set forth in [Supreme Court] cases, or if it decides a case
differently than [the Supreme Court] has done on a set of
materially indistinguishable facts."  Bell v. Cone, 535 U.S. 685,

694 (2002).  A state court's failure to expressly identify, or even be aware of, a governing Supreme Court case will not prevent its decision to be found contrary to clearly established federal law.  The relevant inquiry is whether the state court's reasoning and result contradict established federal law.  See Early v. Packer, 537 U.S. 3, 8 (2002).

A state court decision is an "unreasonable application" of clearly established federal law "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the particular case."  Bell, 535 U.S. at 694.  When considering the unreasonable application clause, the focus of the inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable."  Id.  The Court has emphasized that "an unreasonable application is different from an incorrect one."  Id. (citing Williams v. Taylor, 529 U.S. 362, 411).  In both scenarios, federal law is "clearly established" if it may be found in holdings, not dicta, of the Supreme Court as of the date of the relevant state court decision.  See Williams, 519 U.S. at 412.

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).  See

Boyette v. Lefevre, 246 F.3d 76, 88-89 (2d Cir. 2001) (noting that deference or presumption of correctness is afforded state court findings where state court has adjudicated constitutional claims on the merits).

Collateral review of a conviction is not merely a "rerun of the direct appeal." Lee v. McCaughtry, 933 F.2d 536, 538 (7th Cir.), cert. denied, 502 U.S. 895 (1991). Thus, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." Brecht v. Abrahamson, 507 U.S. 619, 634 (1993) (citations and internal quotation marks omitted).

II. Procedural History

On July 17, 1995, after a jury trial in the Connecticut Superior Court for the Judicial District of New Haven, Dunkley was found guilty of burglary in the first degree. On September 15, 1995, he was sentenced to a term of imprisonment of eighteen years, execution suspended after fifteen years, followed by five years probation.

Dunkley appealed his conviction on four grounds: (1) insufficiency of the evidence, (2) improper denial of his motion to suppress the "out-of-court show-up identification," (3) improper admission into evidence of an out-of-court photographic identification and (4) request for reconsideration of the Whelan-Newsome rule. On November 18, 1997, the Connecticut Appellate

4

Court affirmed Dunkley's conviction.  See State v. Dunkley, 47 Conn. App. 914, 702 A.2d 672 (1997).  Dunkley did not file a petition for certification for the ruling to the Connecticut Supreme Court within the required twenty day period.

On March 17, 1998, Dunkley filed a petition for writ of habeas corpus in state court.  The amended petition, filed on February 9, 1999, with the assistance of counsel, contained two claims:  ineffective assistance of retained counsel in the underlying criminal trial and ineffective assistance of retained counsel because trial counsel failed to disclose that he had a conflict of interest in that, at the time of trial, he simultaneously represented Dunkley and a potential trial witness. The state court conducted a trial on the petition.  On May 15, 2000, the court denied the petition.  The Connecticut Appellate Court dismissed Dunkley's appeal and the Connecticut Supreme Court denied his petition for certification.  See Dunkley v. Commissioner of Correction, 73 Conn. App. 819, 810 A.2d 281 (2002), cert. denied, 262 Conn. 953, 818 A.2d 780 (2003).

On May 15, 2003, Dunkley commenced a habeas corpus action in federal court challenging his conviction on four grounds.  The respondent moved to dismiss because Dunkley had not exhausted his state court remedies with regard to three grounds for relief.  In response, Dunkley moved to withdraw the petition without prejudice.  The court granted Dunkley's motion and directed the

5

Clerk to close the case.  See Dunkley v. Lantz, No.
3:03cv865(CFD)(WIG) (D. Conn. Sept. 29, 2003) (entry of
judgment).

On October 8, 2003, Dunkley filed a motion with the
Connecticut Supreme Court seeking suspension of the rules to
enable him to file a late petition for certification.  (See
Resp't's Answer App. E.)  Dunkley did not attach a proposed
petition for certification to his motion.  On November 12, 2003,
the Connecticut Supreme Court denied the motion.  (See Resp't's
Answer App. G.)

By petition dated November 5, 2003, Dunkley commenced this
action seeking review of his conviction pursuant to 28 U.S.C. §
2254.  In February 2004, Dunkley filed an amended petition
asserting what appeared to be ten grounds for relief:  (1) denial
of effective assistance of counsel, conflict of interest; (2)
failure to call alibi witnesses; (3) failure to investigate case
before trial; (4) conflict of interest; (5) denial of effective
assistance of counsel, conflict of interest; (6) "the court err
in suppress of one-on-one show-up identification as well as Maria
Alvardo's out of court identification"; (7) "the victim, Randy
Garcia, was under the influence of drugs known as (illy) pcp";
(8) insufficient evidence to establish Dunkley's guilt; (9)
"should this court reconsider the Whelan-Newsome rule"; and (10)
"Randy Garcia recanted his statement to the police.  Stating the

police provided him with the information."  Grounds 1-5 all reiterate issues addressed in Dunkley's state habeas petition. Grounds 6, 8 and 9 are restatements of issues included in Dunkley's direct appeal.  Grounds 7 and 10 do not appear to have been included in the direct appeal or the state habeas petition.

On September 17, 2004, the court dismissed the claims contained in grounds 7 and 10, that the victim was under the influence of drugs and recanted his statement, and stayed the remaining claims to permit Dunkley to return to state court to exhaust his state remedies on the dismissed claim.  On September 12, 2005, Dunkley filed a second amended petition containing the following claims:  (1) he was denied effective assistance of counsel because trial counsel was under a conflict of interest with a potential witness; (2) trial counsel failed to call alibi witnesses and failed to investigate the case before trial; (3) the trial court erred in suppressing a one-on-one show-up identification and an out-of-court photo identification; and (4) there was insufficient evidence to establish Dunkley's guilt and the court should reconsider the Whelon-Newsome rule.

Respondent has answered the second amended petition and argues that the petition should be denied.

III. <u>Factual Background</u>

Based on the evidence introduced at trial, the jury could have found the following facts.

On the evening of March 10, 1994, the victim was with his sister at her apartment.  They observed two cars stop in front of the building.  The victim immediately ran to a bedroom and hid under the bed.  A few moments later, Dunkley and several other men entered the apartment.  Dunkley was wearing an army jacket and carrying a gun.  The men told the persons in the apartment not to look at them.  They said they were looking for the victim and wanted to take him with them because the victim had stolen drugs and money.  The victim's sister told the men that the victim was not there.  At first, Dunkley remained in the kitchen while other men searched the apartment.  At some time, Dunkley left the kitchen to search a bedroom.  None of the men found the victim.  The men stated that they would return later and one of them fired several shots into the stereo cabinet.  See Resp't's Mem. App. D at 1-2.

IV.  Discussion

Respondent argues that Dunkley is not entitled to the issuance of a writ of habeas corpus on any of the claims included in the second amended petition.

A.  Conflict of Interest

Dunkley first argues that trial counsel was ineffective because he had a conflict of interest.  He states that trial counsel represented Easper Watts ("Watts") and took money from Watts to keep his name out of Dunkley's trial.  Dunkley raised

this claim in his state habeas action.

Evidence presented at Dunkley's trial suggested that the incidents for which Dunkley was arrested were in retaliation for a robbery that occurred earlier in the day at 104½ Rosette Street in New Haven, Connecticut.  See Dunkley, 73 Conn. App. at 823 n.4.  At this time, Watts rented apartments at 104 and 104½ Rosette Street.  He did not live in any of the apartments. Instead, he entered verbal rental agreements with other individuals.  Watts testified at the state habeas hearing.  He stated that he was aware that a robbery had occurred in one of the apartments on March 10, 1994, but did not own any of the items taken.  Watts also stated that he was not involved in the incidents leading to Dunkley's arrest.  The victim of Dunkley's crimes allegedly was responsible for the robbery.  The state court determined that Dunkley wanted trial counsel to try to link Watts to the later incidents on a theory that Watts was retaliating for the robbery.  See id. at 826-27.

Trial counsel also testified at the state habeas hearing. Counsel stated that Dunkley and Watts knew each other and both knew that, at the time of Dunkley's trial, counsel was representing the other.  Counsel stated that he did not believe that he had a conflict of interest because he did not intend to call Watts as a witness.  Counsel stated that Watts had no beneficial information and his criminal history would have been

detrimental to Dunkley's defense.  The court credited all of counsel's statements.  See Dunkley v. Warden, No. CV 98-0331265-S (Memorandum of Decision dated May 15, 2000), Resp't's Mem. App. I, at 15-16.

The Sixth Amendment right to counsel includes a right to counsel who is free from conflicts of interest.  See Wood v. Georgia, 450 U.S. 261, 271 (1981).  An attorney may represent multiple defendants without violating the Sixth Amendment unless the representation gives rise to an actual conflict of interest. The mere possibility of a conflict is insufficient to demonstrate a Sixth Amendment violation.  See Cuyler v. Sullivan, 446 U.S. 335, 348, 350 (1980).  Demonstration of an actual conflict of interest that adversely affects counsel's performance is sufficient to demonstrate ineffective assistance of counsel.  The petitioner is not required to show that the conflict of interest resulted in actual prejudice to the petitioner's defense.  See Strickland v. Washington, 466 U.S. 668, 692 (1984).

Dunkley fails to present any evidence to demonstrate that trial counsel had an actual conflict of interest.  Watts and Dunkley were not co-defendants, the only situation where the Supreme Court has presumed the existence of prejudice.  See Mickens v. Taylor, 535 U.S. 162, 174-176 (2002) (holding that prejudice will not be presumed unless the alleged conflict of interest is the result of multiple simultaneous representations).

10

In addition, there was no evidence that Watts had any connection with Dunkley's crimes.  Thus, Dunkley fails to demonstrate that counsel's actions regarding Watts were contrary to or an unreasonable application of any Supreme Court holding.  The petition will be denied as to the claim of conflict of interest.

  B. <u>Failure to Call Alibi Witness</u>

  Dunkley also argues that trial counsel was ineffective because he failed to call his family members as alibi witnesses.

  To demonstrate that trial counsel was ineffective, Dunkley must show that counsel's performance was deficient and that the deficient performance prejudiced his defense.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687.  Counsel's performance is deficient if it falls below the reasonable competence exhibited by lawyers with ordinary training and skill in criminal law.  Perfect performance is not guaranteed under the Sixth Amendment.  <u>See</u> <u>id.</u> at 690.  To satisfy the prejudice part of the test, Dunkley "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Id.</u> at 694.

  Decisions relating to trial strategy are difficult to challenge.  The court makes every effort to avoid the effects of hindsight and tries to evaluate strategic decisions from counsel's perspective at the time.  The court applies a strong

presumption that counsel's actions constitute reasonable professional assistance.  See id. at 689, 690-91.

At the habeas hearing, Dunkley testified that his wife, sister and mother could have provided an alibi defense.  He claimed that, at the time of the crime, he was at home with his family.  He states that, although he provided this information to trial counsel, counsel did not interview any of the alibi witnesses.  See Habeas Hearing Transcript, Resp't's Mem. App. P at 10-11.

Dunkley testified that at 4:30 p.m., he drove his wife to an appointment at a hair salon.  He returned home at 5:00 p.m. to eat dinner with his sister and mother.  He left approximately 45 minutes later to pick up his wife at the salon.  He arrived at the salon at 6:00 p.m. and remained there for 90 minutes.  Dunkley was arrested when he left the salon.  Dunkley's family testified at the habeas hearing.  Dunkley's wife testified that Dunkley did drive her to the hair appointment and picked her up, but could not remember the time of the appointment.  His sister and mother testified that Dunkley was at home with them, eating dinner, between 5:00 and 6:00 p.m.  See id. at 11-14, 66-69, 72-73, 81-82.

Trial counsel testified that he spoke with Dunkley about an alibi defense.  Although Dunkley mentioned all of his family members, he admitted to counsel that only his mother could

provide an alibi.  Counsel stated that, contrary to Dunkley's assertion, he did interview Dunkley's wife and mother before deciding not to present an alibi defense.  Dunkley's wife was not with him at the time of the crime and told counsel that she did not want to be involved.  Thus, counsel decided not to call her as a witness.  Dunkley's mother was reluctant to testify. Counsel also considered the adverse effect of having Dunkley's mother as the only alibi witness.  See id. at 33-34, 37-41.

The state court determined that counsel considered using Dunkley's family as alibi witnesses and decided that they would not be good witnesses.  The habeas court found that the testimony of the family members at the hearing was inconsistent and not credible.  On appeal of the denial of the state habeas petition, the Connecticut Appellate Court refused to apply hindsight.  The court determined that the matter was one of trial strategy and that, as demonstrated by the habeas court's assessment of the witnesses, Dunkley had not shown that calling his family as witnesses would have been helpful in establishing an alibi defense.

Dunkley fails to show that the state courts' determination that counsel's decision not to present alibi witnesses was reasonable trial strategy was contrary to or an unreasonable application of Supreme Court holdings.  Thus, the petition will be denied as to this claim.

13

C.    Failure to Investigate

Dunkley contends that trial counsel was ineffective because he failed to investigate the case before trial.  The state court found, however, that, prior to trial, counsel obtained all of the police reports and witness statements and discussed all of the evidence with Dunkley.

The state courts also considered Dunkley's claim that counsel failed to call Watts as a witness.  Counsel determined that Watts' testimony would have been cumulative.  In addition, in light of Watts' numerous felony convictions, counsel feared that any association of Dunkley with Watts would have been detrimental to the defense.  The habeas court concluded that counsel's decision not to call Watts as a witness because Watts' testimony was at best cumulative and at worst detrimental was sound trial strategy.  Although Watts did not testify at trial, he did testify at the habeas hearing.  The Connecticut Appellate Court determined that Dunkley's argument that counsel should have called Watts and attempted to implicate him in a third party liability defense was without merit.  The court concluded that there was no evidence directly linking Watts to the offenses with which Dunkley was charged.  Thus, the court agreed that the decision was sound trial strategy.  See Dunkley, 73 Conn. App. at 824-27.

Dunkley has not demonstrated that the state court decisions

14

were contrary to or an unreasonable application of Supreme Court
law.  Thus, his petition will be denied on the claims that
counsel failed to investigate his case or implicate Watts.

    D.  <u>Procedural Default</u>

Respondent argues that Dunkley has procedurally defaulted on
his remaining claims.  In the alternative, he contends that all
of the remaining claims should be denied on the merits.  In
opposition, Dunkley argues that the court should consider these
claims exhausted because he has no available remedy in state
court.

The three remaining claims were raised on direct appeal.
Dunkley did not file a petition for certification to the
Connecticut Supreme Court within the twenty day period required
under Connecticut court rules.  Instead, he waited six years to
file a motion seeking permission to file a late petition for
discretionary review.  Dunkley did not include in that motion his
grounds for relief.  The Connecticut Supreme Court denied the
motion.  Thus, Dunkley has not presented any of the remaining
three claims to the Connecticut Supreme Court and, at this time,
there is no avenue that would permit him to do so.

Generally, the federal court must refrain from entertaining
a challenge to a state court conviction where the petitioner has

not exhausted his state court remedies.  See Duckworth v. Serrano, 454 U.S. 1 (1981).  However, where a petitioner has no available avenue to exhaust his claims and the state court would consider the claim procedurally barred, the court can deem the claim to be exhausted.  See Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).  Respondent concedes that Dunkley has no available remedy to obtain review of these claims by the Connecticut Supreme Court.  See Resp't's Mem. at 31.  The court agrees and considers the claims to be exhausted.

Respondent argues that the court should consider the claims to be procedurally defaulted.  The availability of review on the merits of a constitutional claim is limited by various procedural barriers, including rules governing procedural default.  See Daniels v. United States, 525 U.S. 374, 381 (2001); Coleman v. Thompson, 501 U.S. 722, 750 (1991).  When a habeas petitioner has failed to comply with state procedural requirements, the claims will not be reviewed on a federal petition for writ of habeas corpus unless the petitioner can demonstrate cause for his state court default and prejudice resulting therefrom.  The only exception to this prohibition is where the petitioner can demonstrate that the failure to review the federal claim will result in a fundamental miscarriage of justice.  See Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (citations omitted).

The respondent contends that the federal court should

16

decline to review the merits of Dunkley's remaining claims because the Connecticut Supreme Court denied Dunkley's motion for leave to file a late petition for certification.  Because Dunkley did not include in his motion the grounds upon which he was challenging his conviction, the respondent argues that this denial necessarily was based on procedural default, an independent and adequate state ground.  This court agrees.

To obtain review of this claim, Dunkley must demonstrate both cause for his default and prejudice resulting therefrom or that denial of review will result in a fundamental miscarriage of justice.  Regarding cause, Dunkley states only that his appellate attorney did not file a petition for certification after his conviction was affirmed per curiam by the Connecticut Appellate Court.

> In procedural default cases, the cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court.  Murray v. Carrier, 477 U.S., at 488,....  Objective factors that constitute cause include "'interference by officials'" that makes compliance with the State's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel."  Ibid.  In addition, constitutionally "[i]neffective assistance of counsel ... is cause."  Ibid.  Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default.  Id., at 486-488.

McCleskey v. Zant, 499 U.S. 467, 493-94 (1991).

17

Dunkley has not identified any objective factors showing that trial counsel was prevented from filing a petition for certification.  Dunkley did file a state habeas petition on the ground that trial counsel was ineffective for not filing a petition for certification.  That petition was denied.  The state court determined that Dunkley "failed to prove that it was likely that the Supreme Court would have granted a petition for certification from a *per curiam* decision by the Appellate Court" and opined that it was more likely that, had a petition been filed, it would have been denied.  Resp't's Mem. App. R at 4.  An appeal of that ruling is pending.  The court concludes that Dunkley has not demonstrated cause to excuse his procedural default.  Because Dunkley has not shown cause for the procedural default, the court need not address the prejudice prong of the test.  Thus, Dunkley's procedural default precludes federal review of his claims.

The Supreme Court interprets the fundamental miscarriage of justice exception to mean that the constitutional violation "has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986).  Nowhere does Dunkley argue that he is innocent of all charges.  Thus, the exception does not apply.  See Schlup v. Delo, 513 U.S. 298, 316 (1995) (requiring that petitioner must present "evidence of innocence so strong that a court cannot have confidence in the

18

outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error" to satisfy the fundamental miscarriage of justice exception).  Accordingly, the court declines to review the merits of Dunkley's remaining claims.

V.    Conclusion

The second amended petition for writ of habeas corpus [**Doc. #35**] is hereby **DENIED**.  Dunkley may move to reopen the petition with regard to the procedurally defaulted claims should the Connecticut appellate courts find ineffective assistance of appellate counsel.

**SO ORDERED** this __21st___ day of March, 2006, at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior United States District Judge